(7 App. Div. 175)

## WILSON v. DICKEL et al.

(Supreme Court, Appellate Division, First Department. June 29, 1896.)

TRIAL—INSTRUCTIONS—CONFUSING SEPARATE GROUNDS OF LIABILITY.

> In an action for personal injuries caused by the slipping of a saddle on a horse hired by plaintiff from defendants, the complaint charged defendants with negligence—First, in failing to furnish plaintiff with a properly equipped saddle and horse; and, second, in failing to place them in his hands, with the saddle properly adjusted. The evidence showed that the failure to adjust the saddle properly either had no bearing on the accident, or that plaintiff assumed the risk; but there was evidence that the saddle was in a defective condition. The man in charge of defendants' saddle room was called as a witness, and produced a saddle which he testified was the saddle used on the occasion of the accident. *Held*, that a charge that if the jury "find that that is the saddle, and that that saddle is all right, and was properly adjusted and girded, then you will find for the defendants; but it might have been that saddle, and not properly girded," was improper, as confusing the two grounds of liability.

Appeal from trial term, New York county.

Action by John C. Wilson against Charles W. Dickel and others for personal injuries. From a judgment entered on a verdict in favor of plaintiff for $400 damages and $193.54 costs, and from an order denying a motion for a new trial, defendants appeal. Reversed.

The action is to recover damages for personal injuries suffered by plaintiff through the alleged negligence of the defendants. The defendants were co-partners, conducting a riding school and letting horses for hire, and at the time the injuries were received the plaintiff was a pupil of the defendants, and

had taken sufficient lessons in horseback riding so that he "felt perfectly able to go out with a well-trained horse." In company with a Mr. Stockholm on July 3, 1892, plaintiff went to defendants' riding academy, and ordered horses to be saddled and equipped, which were brought, and they started on a ride through Central Park. Plaintiff's horse was a good one, spirited, and well trained, and the plaintiff liked him. He had ridden him before. While in the park, Mr. Stockholm noticed that plaintiff's saddle was giving way, or seemed to be moving from position, and suggested to plaintiff that they get a mounted policeman, who was in sight, to fix it. Plaintiff dismounted, and the policeman, at plaintiff's request, tried to adjust the girths of plaintiff's saddle. He testified that he found the straps in poor condition. There were two girths with three straps on the saddle. One girth had two buckles; the second, one buckle. On one strap the tongue of the buckle was short, and would not hold; another strap was split from hole to hole; so that there was but one buckle that held anything at all. The policeman called plaintiff's attention to that condition, and remarked that it was an outrage to allow anything like that to go out. He tightened the girths as well as he could, and told the plaintiff that was the best he could do, and that he guessed it would hold. The plaintiff and Mr. Stockholm then proceeded on their ride, going through the park, and on up to Claremont, where they stopped about half an hour, giving their horses to the attendants there, and then started back. On remounting at Claremont, plaintiff did not examine the girths of his saddle, nor did he ascertain whether the girths had been loosened while the horses had been in the stable. While going down Riverside Drive at a gallop, the road at this point being a little down grade, the plaintiff felt the saddle suddenly slip and turn, and he went off, and struck on his head, and was painfully injured. Up to that time no inclination of the saddle to slip had been noticed since leaving Claremont. The horse was caught by a boy, and a policeman put the saddle back on the horse, and the boy rode the horse with the saddle to defendants' stable. Mr. Stockholm testified that this policeman called his attention to the fact that the leather strap was rotten, and that he (the witness) observed that the buckle tongue had gouged the leather out, and drawn by for three or four holes, slipping from hole to hole. The man having charge of the defendants' saddles was examined, and he produced a saddle in good condition, without any tears in any of the straps between the different holes, which he testified was the same saddle that was on the horse when he came into the stable after the accident. The plaintiff paid out $375 for doctors' bills, trained nurses, etc., and the jury brought in a verdict against the defendants in the sum of $400. A motion for a new trial was made and denied, and from the order denying the motion, and from the judgment entered upon the verdict, the defendants appeal.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Henry B. Anderson, for appellants.
Byram L. Winters, for respondent.

O'BRIEN, J. The negligence of the defendants was predicated upon the failure—First, to furnish the plaintiff with a properly equipped saddle and horse; and, second, to place them in his hands with the saddle properly adjusted. These grounds, because not consistent, should not be confused; and unless there was evidence to sustain a recovery upon either ground, and unless the distinction between the separate grounds was clearly presented for the consideration of the jury, confusion was likely to ensue and a mistrial occur. Upon the question of whether or not the defendants failed in their duty to place the plaintiff in possession of a saddle properly adjusted upon the horse, the evidence shows that, after leaving the stable, and upon reaching the park, the attention of the plaintiff was

called to his saddle, and thereupon it was adjusted by a police officer, and thereafter the plaintiff continued his ride, and, after reaching Claremont, at the upper end of Riverside Drive, the horse was placed in the shed, where he remained for half an hour. While it was suggested that it was the custom to loosen the saddle while the horse was standing, and then to adjust it again when the party was ready to remount, there is no evidence directly upon that point; but we have the fact that the plaintiff, either with or without examining whether the saddle was properly adjusted, remounted, and proceeded to ride home. In this state of the record it is clear that the defendants could not be held responsible for the injuries which the plaintiff suffered if they resulted from an improper adjustment of the saddle upon the horse, because such obligation as rested in this respect upon the defendants was violated at the time the horse left the riding academy, and, it appearing that the attention of the plaintiff was called to that fact, and that the saddle was adjusted in the park, and the plaintiff thereafter continued to ride, we are necessarily brought to the conclusion, either that the failure to adjust the saddle properly in the first instance had no bearing upon the accident which culminated in the injuries, or, if we assume that the saddle left the riding academy without being properly adjusted, the plaintiff had notice of this fact, and undertook to remedy it; and if, without doing it so as to render the saddle safe, he proceeded on his ride, he was guilty of negligence which contributed to his injuries, and which would bar his recovery. In the condition of the record, therefore, as it stood at the close of the case, it became the duty of the court to dismiss from the consideration of the jury this ground of recovery, and, if the plaintiff was entitled to damages, it could only be upon the other ground, namely, that the defendants failed in their duty to furnish the plaintiff with a properly equipped saddle and horse. There was testimony unquestionably from which the jury could infer that the accident was due to this cause, the evidence pointing to the fact that the saddle was in poor condition, the buckles and leather composing the straps permitting the tongue of the buckle, when a strain was placed on the horse, as in galloping down hill, to draw through the leather, and thus, by increasing the size and length of the saddle girths, to permit the saddle itself to slip. The plaintiff could not, as matter of law, be held guilty of negligence in assuming that the saddle was equipped with all necessary and proper appliances; and, as the question whether the officer in the park called attention to the fact that these defects rendered the saddle unsafe was placed in dispute by the testimony of the officer and that of the plaintiff, the latter stating that upon adjusting the saddle he was told by the officer that it would hold, the question of plaintiff's contributory negligence, therefore, was one of fact to be disposed of by the jury. In his charge, however, the judge neglected to present clearly the two distinct theories upon which a recovery was sought, or, as stated, to eliminate from the consideration of the jury the question of the adjustment of the saddle. The man in charge of the defendants' saddle room was called, and brought with him a saddle and girths complete, which were in a perfectly proper condi-

tion, and which were put in evidence and exhibited to the jury, and he testified that they were the saddle and girths used on the occasion of the accident. The defendants' counsel asked the court to charge that: "If the jury believe that the saddle used was the one shown in court, and that the trappings were unchanged since the accident, they must find for the defendants." The Court: "If they find that that is the saddle, and that that saddle was all right, and was properly fastened, properly adjusted and girded, then you will find for the defendants. But it might have been that saddle, and not properly girded." It will thus be seen that a proposition which the defendants were entitled to have charged was not charged as requested, but was involved with the other ground upon which the defendants' liability was sought to be placed, namely, the proper fastening and adjustment of the saddle. This could not but have produced confusion in the minds of the jury, and it not only prevented them from considering the single ground upon which a recovery upon this testimony could be upheld, but left them to determine such liability upon the other ground of the improper adjustment of the saddle.

For the reasons stated, therefore, we think that the errors committed upon the trial require that the judgment should be reversed, and a new trial ordered, with costs to appellants to abide event. All concur.